**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PROCARE AUTOMOTIVE, LLC, | § | |
| *Plaintiff* | § | |
| | § | SA-21-CV-00896-XR |
| -vs- | § | |
| | § | |
| MIDAMERICAN ENERGY SERVICES, | § | |
| LLC, | § | |
| *Defendant* | § | |

**<u>ORDER</u>**

On this date, the Court considered Plaintiff Procare Automotive, LLC's Motion to Remand (ECF No. 6), Defendant MidAmerican Energy Services, LLC's response (ECF No. 10), and Plaintiff's reply (ECF No. 11). After careful consideration, the motion is **DENIED**.

**BACKGROUND**

Plaintiff Procare Automotive, LLC ("Procare") seeks to recover from Defendant MidAmerican Energy Services, LLC ("MidAmerican") for excessive electricity charges incurred during a winter storm in February 2021.

MidAmerican provided energy to various Procare locations pursuant to a Retail Electric Supplier Agreement (the "Agreement") executed in August 2018. Procare alleges that it agreed to pay MidAmerican a fixed price for electricity set forth in Schedule B to the Agreement, which provided that the "Fixed Price . . . includes . . . all charges assessed by ERCOT and Ancillary Charges." ECF No. 1-2 at 3.

In February 2021, the State of Texas experienced a weeklong disaster resulting from freezing temperatures, which caused an unprecedented strain on the state's energy grid and widespread power outages affecting millions of homes and businesses, including Procare. Increased energy demands raised the price of natural gas and costs to electricity providers.

In the months following the storm, MidAmerican assessed electricity charges for all eleven of Procare's locations at $81,825.00, which represents a 493% increase in the cost of electricity over the prior billing period. *Id.* at 4. Procare asserts that, "[i]n an effort to be reasonable," it has paid MidAmerican an amount equal to 125% of the prior billing rate, but has disputed the remaining amount, totaling $62,381.53. *Id*.

Procare sent a letter to MidAmerican questioning the increased charges, and Defendant responded that "the charges were 'supplemented ancillary charges' assessed by ERCOT which it claims it is entitled to recover." *Id*. Procare alleges that MidAmerican then "threatened to disconnect all of Procare's electricity services at its commercial locations unless Procare paid the disputed 'ancillary charges.'" *Id*.

Plaintiff filed suit in the 225th Judicial District Court in Bexar County, Texas, asserting claims for breach of contract and declaratory and injunctive relief. *Id*. Defendant removed the case to this Court on September 20, 2021, on the basis of diversity jurisdiction. ECF Nos. 1, 6. Plaintiff timely moves to remand, arguing the amount in controversy does not exceed the $75,000 threshold. ECF No. 6. Defendant opposes remand. ECF No. 10.

## DISCUSSION

### I.    Legal Standards

On a motion to remand, a court must consider whether removal to federal court was proper. Removal is proper in any "civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "A federal district court has subject matter jurisdiction over a state claim when the amount in controversy is met and there is complete diversity of citizenship between the parties." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing 28 U.S.C. § 1332(a)). The amount in controversy, exclusive

of costs and interest, must exceed $75,000. *See* 28 U.S.C. § 1332(a). The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

The amount in controversy is ordinarily determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. *St. Paul Reins. Co. v. Greenberg,* 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar,* 47 F.3d at 1408. When a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount. *Greenberg*, 134 F.3d 1250 at 1253. The district court must first examine the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount. *Id.* If it is not thus apparent, the court may rely on "summary judgment-type" evidence to ascertain the amount in controversy. *Id.* After a defendant has met its burden, the plaintiff may prevent removal by "show[ing] with 'legal certainty' that the claims alleged are for less than $75,000." *Espinoza v. Allstate Texas Lloyd's*, 222 F. Supp. 3d 529, 533 (W.D. Tex. 2016) (citing *De Aguilar*, 47 F.3d at. 1412). "A plaintiff may do so by pointing to a state law that prevents recovery in excess of the damages sought in the state court petition or by 'fil[ing] a binding stipulation or affidavit with their complaints.'" *Id.*

In evaluating a motion to remand, the court must evaluate the removing party's right to remove "according to the plaintiffs' pleading at the time of the petition for removal," *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939), and must resolve "all factual allegations," "all contested issues of substantive fact," and "all ambiguities in the controlling state law" in the plaintiff's favor. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

3

## II.    Analysis

The petition does not include a specific damages amount. Rather, Plaintiff, in compliance with Tex. R. Civ. P. 47, alleges that it seeks "monetary relief of $250,000 or less and non-monetary relief, including declaratory and injunctive relief." ECF No. 1-2 at 2–3. Accordingly, the Court must examine the petition to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount.

In its motion for remand, Plaintiff argues that it is evident from the face of the petition that the amount in controversy is not satisfied in this case, asserting that "the state court petition specified the amount in dispute between the parties: $62,381.53 – well below the $75,000 required for diversity jurisdiction." ECF No. 6 at 6 (citing ECF No. 1-2 ¶ 9 ("While Plaintiff disputes the additional 25% rate increase based on the language of the agreement, the amount billed and disputed equals $62,381.53.")). However, in alleging that the disputed amount totals $62,381.53, Plaintiff disregards its own claim for declaratory relief. Specifically, Plaintiff seeks a judicial declaration that (1) the Fixed Price provision in the Agreement includes all Ancillary Charges (including those charged following the winter storm), and (2) the Ancillary Charges are excessive and exorbitant and constitute price gouging in violation of Texas public policy. ECF No. 1-2 at 5.

In a declaratory judgment action, the amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul Reins. Co. v. Greenberg*, 134 F.3d 1250, 1252-53 (5th Cir. 1998) (quoting *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983)). Accordingly, the value of a judicial declaration that Defendant is not entitled to the Ancillary Charges—either under the terms of the Agreement or because they violate Texas public policy—would amount to *all* of the Ancillary Charges that Plaintiff incurred, including

4

the additional 25% rate increase that Plaintiff paid "[i]n an effort to be reasonable." ECF No. 1-2 at 4. The parties appear to agree that this additional 25% rate increase reflects $4,149.34 in allegedly excessive charges. *See* ECF No. 10 at 13; ECF No. 11 at 3. Together with the "disputed amount" of $62,381.53, the Ancillary Charges that are the subject of Plaintiff's claim for declaratory judgment thus total $66,530.87.[1]

In addition to declaratory relief, the petition also seeks "reasonable and necessary attorneys' fees." ECF No. 1-2 at 3. In the Fifth Circuit, attorneys' fees are included in calculating the amount in controversy for diversity jurisdiction. *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990) (citing 14A C. Wright & A. Miller, Federal Practice & Procedure § 3712, at 176 (2d ed. 1985) ("The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute.")). Here, Plaintiff asserts that it is entitled to recover attorneys' fees both under the terms of the Agreement and pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.009 and 38.001. ECF No. 1-2 at 7.

Although it is not "facially apparent" from the petition that the attorneys' fees in this case will exceed $8,469.13—the difference between the amount of allegedly excessive Ancillary Charges ($66,530.87) and the jurisdictional amount ($75,000)—additional evidence of potential attorneys' fees establishes that the amount in controversy is more likely than not met in this case. Defendant estimates that Plaintiff will incur a minimum of $14,000 in reasonable and necessary

---

[1]       Defendant suggests that the Court should consider potential punitive damages in evaluating the amount in controversy based on Plaintiff's reference to Section 17.46 of the Texas Deceptive Trade Practices Act (the "DTPA") in its claim for declaratory relief. ECF No. 10 at 15–16. Although the DTPA itself allows for an award of treble damages for intentional violations, *see* TEX. BUS. & COM. CODE § 17.50(b), there is no indication on the face of the petition that Plaintiff seeks to recover punitive damages. The petition does not include an independent claim for a violation of the DTPA and, contrary to Defendant's characterization, Plaintiff does not seek a declaration that the Ancillary Charges violate the DTPA. Instead, it seeks a declaration that the Ancillary Charges violate Texas public policy, and cites provisions of the DTPA concerning fuel pricing as evidence of public policy in Texas. ECF No. 1-2 at 5. Accordingly, the Court does not include punitive damages in calculating the amount in controversy.

pretrial attorneys' fees based on prevailing hourly rates in the San Antonio market and fee awards in similar cases. *See* ECF No. 10 at 17–20. An affidavit from Procare's attorney indicating that Plaintiff had incurred fees and costs totaling $6,194.88 as of the date of removal confirms the reasonableness of Defendant's estimate. *See* ECF No. 11-1 at 1.

Plaintiff contends that, because the amount in controversy must be judged at the time of removal, the pre-removal fees establish that the amount in controversy has *not* been satisfied in this case at the time of removal. *See* ECF No. 11 at 4 (arguing that, based on the total Ancillary Charges and attorneys' fees "*at the time of removal*, the total amount in controversy was $72,725.75, which is less than the $75,000 threshold for the purposes of diversity jurisdiction."). In other words, Plaintiff asserts that, in calculating the amount in controversy, the Court can only consider attorneys' fees that have already been incurred at the time of removal, not fees that are likely to be incurred at later stages of the litigation. Many courts, including this one, have held otherwise. *See Dean v. Accenture Fed. Servs., LLC*, No. 5:11-CV-520-XR, 2011 WL 6355298, at *4 (W.D. Tex. Dec. 19, 2011) ("Though speculative, the Court also considers future attorney's fees that will be earned as the case proceeds."); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002) (finding that plaintiff met its burden of establishing the threshold amount in controversy through an undisputed affidavit claiming that, based on the nature of the case, aggregate attorneys' fees would likely exceed $75,000); *Albright v. IBM Lender Process Servs. Inc.*, No. CIV.A. H–11–1045, 2011 WL 5921379 (S.D. Tex. Nov. 28, 2011) ("[T]he potential future award of attorney's fees is included in calculating the amount in controversy.")). The Court concludes that Defendant has satisfied its burden of establishing by a preponderance of the evidence that the amount in controversy in this case exceeds the jurisdictional amount.

Because Defendant has met its burden, Plaintiff must "show with 'legal certainty' that the claims alleged are for less than $75,000" in order to prevent removal. *Espinoza*, 222 F. Supp. 3d at 533. Here, Plaintiff does not cite to, or otherwise identify, any state law limiting damages below $75,000, nor do it show this Court any stipulation or affidavit filed with the petition limiting damages below $75,000. Indeed, the petition itself does not even purport to limit recovery to less than $75,000, and explicitly contemplates recovery beyond $250,000. *See* ECF No. 1-2 at 3 ("Plaintiff further seeks all other relief to which it may be entitled, including but not limited to all available common law and statutory damages, and reasonable and necessary attorneys' fees and costs, which may cause the relief obtained to exceed [$250,000] by the time of trial."). Accordingly, Plaintiff has failed to demonstrate to a legal certainty that it could not recover more than $75,000, and its motion for remand must be denied.

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion to Remand (ECF No. 6) is **DENIED**, as is Plaintiff's request for attorney's fees pursuant to § 1447(c).

It is so **ORDERED**.

**SIGNED** this 7th day of December, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE